UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY A. ISRAEL,

              Plaintiff,                   Case No. 2:20-cv-11812
                                          District Judge Sean F. Cox

v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 13), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), and REMAND TO THE COMMISSIONER

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment or remand (ECF No. 13), **DENY** Defendant's cross-motion for summary

judgment (ECF No. 14), and **REMAND** to the Commissioner for action consistent

with this recommendation.

**II.    REPORT**

       Plaintiff, Tammy A. Israel, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her applications for disability insurance (DI)

and supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment or remand (ECF No. 13), the Commissioner's cross-motion

for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15), and the

administrative record (ECF No. 11).

### A.    Background and Administrative History

Plaintiff filed her application for DI benefits on November 30, 2017 –

alleging that her disability began on September 29, 2017 – and her application for

SSI benefits on December 4, 2017 – alleging that her disability began on

December 4, 2017; in each case her alleged disability occurred at the age of 51.

(ECF No. 11, PageID.181, 183.)[1]  In her disability report, she alleged that certain

conditions (atrial fibrillation, carpal tunnel syndrome (CTS), torn rotator cuff, and

kyphosis) limit her ability to work.  (ECF No. 11, PageID.254.)  On May 7, 2018,

the Social Security Administration (SSA) found that Plaintiff was not disabled.

(*Id*., PageID.90-123.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").

(ECF No. 11, PageID.163-177.)  On July 23, 2019, ALJ Martha M. Gasparovich

---

[1] The record also contains an SSI application summary, which is time-stamped
May 26, 2018 but blank for an application date.  (ECF No. 11, PageID.229-239.)
The Court assumes this application is either errant or not at issue in the current
matter.

held a hearing, at which Plaintiff and a vocational expert (VE), Larissa Boase, testified.  (*Id*., PageID.63-89; *see also id*., PageID.340-341, 343.)  On July 31, 2019, ALJ Gasparovich issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id*., PageID.45-61.)

Plaintiff submitted a request for review of the hearing decision.  (Id., PageID.212-215.)  However, on May 12, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id*., PageID.36-42.)  Thus, ALJ Gasparovich's decision became the Commissioner's final decision.  Plaintiff timely commenced this matter on July 2, 2020.

**B.     Plaintiff's Medical History**

The administrative record contains approximately 320 pages of medical records, which were available to the ALJ at the time of the July 31, 2019 decision.  (ECF No. 11, PageID.60-61, 350-669 [Exhibits 1F-11F].)  These materials will be discussed in detail, as necessary, below.

**C.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 29, 2017, the alleged onset date (AOD).  (ECF No. 11, PageID.51.)  At **Step 2**, the ALJ found that Plaintiff had

several severe impairments (thoracic and cervical degenerative disc disease

(DDD); obesity; adhesive capsulitis left shoulder; degenerative joint disease

(DJD) bilateral shoulders; diabetic neuropathy; chronic obstructive pulmonary

disorder (COPD)).  (*Id.*, PageID.51-52.)  The ALJ also explained that Plaintiff's

left great toe contusion, vertigo, edema of the lower extremity, and major

depressive disorder were non-severe impairments.  (ECF No. 11, PageID.51.)  At

**Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id.*, PageID.52-53.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and

determined that Plaintiff had the RFC:

> . . . to stand/walk 6 of 8 hours. Sit 6 of 8 hours.  Lift 20 pounds
> occasionally and 10 pounds frequently [*i.e., exertional limitations*].
> Could not perform overhead reaching [*i.e., manipulative limitation*].
> Stooping would be limited to occasionally.  Never climb ropes,
> ladders, or scaffolds [*i.e., postural limitations*].  Handling and
> fingering would be limited to frequently [*i.e., manipulative
> limitations*].  Avoid hazards, such as open moving machinery, driving
> commercial vehicles, and unprotected heights [*i.e., environmental
> limitations*].

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

(*Id*. at 53-55.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id*. at 55.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 56-57.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 29, 2017 through the date of the decision.  (*Id*. at 57.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that:  (1) the ALJ failed to create an accurate RFC assessment; and, (2) the ALJ's evaluation of Plaintiff's subjective symptoms is not supported by substantial evidence.  (ECF No. 13, PageID.684-682.)  Plaintiff has the burden of proof on each of these statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### 1.    The physical RFC assessment

Plaintiff's first statement of error challenges the accuracy of the ALJ's RFC assessment *at Step Five* (ECF No. 13, PageID.684-688); however, the argument is improperly framed.  While Plaintiff correctly contends that the burden is on the Commissioner at Step 5 (ECF No. 13, PageID.685), and while she may dispute the terms of the hypothetical presented to the VE – whose responsive testimony provides support for the Step 5 conclusion that an individual with Plaintiff's RFC can perform the work of a scrap sorter, counter clerk, or greeter (ECF No. 11, PageID.84-85) – Plaintiff's argument challenges the ALJ's RFC assessment (ECF No. 11, PageID.53), a conclusion which is reached *between Steps 3 and 4.*

#### a.    Plaintiff's RFC argument emphasizes the ALJ's treatment of an opinion from her primary care provider, Emily Soni, D.O.

At the time of her medical source statement (MSS), Dr. Soni claimed to have treated Plaintiff for five years, *i.e.*, since approximately 2013.  (ECF No. 11,

PageID.478, 481.) The administrative record contains evidence of treatment with Dr. Soni of Providence Medical Center (South Lyon, Michigan) as early as September 21, 2016 and as late as January 29, 2019. (ECF No. 11, PageID.373-401 [Ex. 2F], 482-494 [Ex. 5F], 509-524 [Ex. 7F], 620-669 [Ex. 11F].) Among these visits is one dated January 5, 2018, at which she had a long list of diagnoses, which included, *inter alia*, spinal stenosis in cervical region, adhesive capsulitis of shoulder, diabetic neuropathy, neoplasm of uncertain behavior of skin, body mass index 30+ - obesity, multiple joint pain, and hypoglycemia. (ECF No. 11, PageID.491.) On the same date, Dr Soni completed a physical RFC questionnaire. (ECF No. 11, PageID.478-481 [Ex. 4F].) Dr. Soni listed adhesive capsulitis of shoulder and spinal stenosis of cervical spine as the diagnoses, explained that Plaintiff's symptoms included dizziness, fatigue, weakness, and tremors, and further explained the clinical findings and objective signs as follows: "[d]ecreased grip strength, hand tremor, decreased [range of motion] of bilateral shoulders, [and] increased thoracic kyphosis[.]" (*Id.*, PageID.478.) Dr. Soni then opined on Plaintiff's various exertional, postural, and manipulative limitations. (*Id.*, PageID.478-481.)

By the time of the January 29, 2019 visit, Plaintiff's list of diagnoses included diabetic neuropathy, obesity, and depressive disorder. (ECF No. 11, PageID.620, 623.)

### b.    The ALJ did not adequately articulate why Dr. Soni's MSS was unsupported or inconsistent.

Plaintiff challenges the ALJ's compliance with the applicable regulation.  By way of background, Plaintiff filed her applications for benefits in November 2017 and December 2018.  (ECF No. 11, PageID.216, 218.)  Accordingly, the SSA assessed opinion evidence in accordance with 20 C.F.R. §§ 404.1520c, 416.920c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.").

Even though ALJ Gasparovich acknowledged these regulations at the outset of her RFC discussion (*see* ECF No. 11, PageID.53), the ALJ did not adequately explain how she found Dr. Soni's MSS to be unsupported or inconsistent.  The SSA "will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."  20 C.F.R. § 404.1520c(b).  As for the "most important factors," the regulation provides:

> The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.  Therefore, *we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision*.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider

medical opinions and prior administrative medical findings in your
case record.

20 C.F.R. § 404.1520c(b)(2) (emphasis added).  Within the RFC discussion, the

ALJ expressly mentioned Dr. Soni as follows:

> In January 2018, Dr. Soni completed a medical source statement
> (B4F).  She opined that the claimant would miss more than 4 days of
> work per month (B4F/5).  *This opinion is not persuasive because it is
> not supported by the medical records and is not consistent with the
> evidence as a whole*.  In January 2018, the claimant presented to Dr.
> Soni and wanted a mole removed on her chin (B5F/7).  There is
> nothing in these records that would support Dr. Soni's opinion.
>
> In June 2018, the claimant returned to Dr. Soni (B11F/19).  She
> reported neck, shoulder, and arm pain (B11F/22).  However, she said
> that her Tramadol ran out 2 weeks ago (B11F/22).  In August 2018,
> the claimant had a hernia repair (B10F/15).  She was discharged in
> good condition (B10F/16).  Post-operatively, she reported
> improvement (B11F/18).  In September 2018, she presented for an
> annual examination "as required by insurance" (B11F/12).  In January
> 2019, the claimant was counseled on conservative measures, such as
> eating fruits and vegetables and avoiding carbs (B11F/4).

(ECF No. 11, PageID.54.)  Thereafter, within the conclusion of her RFC

discussion, the ALJ similarly stated, "Dr. Soni's opinion is not at all supported by

the medical records."  (*Id*., PageID.55.)

The Undersigned agrees that the ALJ "summarily dismisse[d]" Dr. Soni's

MSS and "fail[ed] to identify which parts are consistent or inconsistent."  (ECF

No. 13, PageID.685.)  Although the Court looked to the DDS's explanation for

insight, it was not helpful; the DDS's characterization of Dr. Soni's MSS does not

offer detail:  "The opinion contains inconsistencies, rendering it less persuasive[,]"

and "[t]he medical opinion is without substantial support from the medical source who made it, which renders it less persuasive." (ECF No. 11, PageID.103-104, 119-120.) In the ALJ's RFC discussion, her reference to a single record – which reflects that Plaintiff sought treatment on January 5, 2018 for removal of a mole on her chin (ECF No. 11, pageID.488) – does little to explain how she rejected Dr. Soni's exertional, postural, or manipulative limitations (ECF No. 11, PageID.479-480) as unsupported and inconsistent, especially considering Dr. Soni's representation that he had treated Plaintiff for 5 years and that she "comes in every 3-6 months." (ECF No. 11, PageID.478.) If the ALJ intended to discount Dr. Soni's January 5, 2018 exertional, postural, or manipulative limitations with references to records from June 2018 through January 2019, it is not clear. (ECF No. 11, PageID.54 (citing *id*., PageID.638, 641, 546, 547, 637, 631, 623).)

Put another way, with respect to the ALJ's treatment of Dr. Soni's MSS, the ALJ's decision "fails to build an accurate and logical bridge between the evidence and the result." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021) (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)), *report and recommendation adopted*, No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021). *See also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("the administrative law judge must make a connection between the evidence relied on and the conclusion

reached."), *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)
("The Commissioner is required to provide 'good reasons' for discounting the
weight given to a treating-source opinion.") (citing 20 C.F.R. § 404.1527(c)(2)).
Plaintiff treated with Dr. Soni for *at least* nearly two-and-a-half years.  Anchoring
the criticisms of this treater's opinions on a single visit does not provide this
claimant with a clear explanation as to why all of Dr. Soni's longitudinal diagnoses
and opinions should be rejected or discounted.

### c.  The ALJ was persuaded by the opinion of state agency medical consultant Valerie Andrews, M.D.

Plaintiff's first statement of error asks the Court to recognize, *e.g.*, "hand
weakness and numbness, tingling and numbness in the hands and feet, loss of grip
strength, bilateral shoulder pain and leg pain and swelling, neck and back pain[,]"
in support of which she cites hearing testimony (ECF No. 11, PageID.70-81), an
October 31, 2016 record from DMC Orthopaedics & Sports Medicine (*id.*,
PageID.356), and multiple records from Providence Medical – South Lyon (*id.*,
PageID.381-382, 386-388, 391, 490-491, 623, 626-628, 631, 637-638, 641-642,
645-646, 648).  (*See* ECF No. 13, PageID.685-688.)

However, Plaintiff's opening brief does not address that the ALJ was
persuaded by Dr. Andrews's April 20, 2018 physical RFC assessment, which the
ALJ deemed "well supported by the medical records and treatment history as
discussed herein."  (ECF No. 11, PageID.54.)  Perhaps Plaintiff knew as much

when she observed that "there are no other medical source statements from any *examining* source that undermine[] the validity of the limitations provided by Dr. Soni . . . [,]" (ECF No. 13, PageID.686-687 (emphasis added)).

> **d.     The ALJ's assessed limitations on lifting, standing and/or walking, and sitting are consistent with those assessed by Dr. Andrews.**

In addition to Plaintiff's articulation argument, she challenges some of the RFC's exertional limitations.  The SSA's consideration of exertional limitations includes seven strength factors – lifting and/or carrying, standing and/or walking, sitting, and pushing and/or pulling.  (ECF No. 11, PageID.101, 117.)  The ALJ concluded that Plaintiff could stand/walk 6 of 8 hours, sit 6 of 8 hours, lift 20 pounds occasionally, and lift 10 pounds frequently.  (ECF No. 11, PageID.53.) These limitations are consistent with work at the light exertional level.  20 C.F.R. §§ 404.1567(b), 416.967(b) ("Physical exertion requirements.")  (*See also* ECF No. 11, PageID.104, 120.)

Plaintiff would have the Court adopt the opinion of Dr. Soni, who assessed limitations on sitting, standing, walking, lifting and carrying that are more consistent with work at the sedentary exertional level.  (ECF No. 11, PageID.479-

480; *see also* 20 C.F.R. § 404.1567(a)).[3]   (*Id.*, PageID.685-687.)  Her exertional

limitation challenges are two-fold.

> **i.      Sitting and standing *at one time* & walking
> around**

Plaintiff takes issue with the ALJ's failure to adopt Dr. Soni's 2-hour

limitation on sitting *at one time* and 1-hour limitation on standing *at one time*, and

perhaps even  the ALJ's omission of Dr. Soni's limitations to sitting for a total of

about 4 hours in an 8-hour working day, needing to walk approximately every 90

minutes for 10 minutes each time, and needing a job that permits shifting positions

at will from sitting standing or walking, as well as sometimes needing to take

unscheduled breaks.  (ECF No. 11, PageID.479-480.)

In essence, Plaintiff advocates for a sit/stand option or permission to change

positions.  (ECF No. 13, PageID.686, 691; ECF No. 15, PageID.725.)  In support

of this argument, Plaintiff cites, *inter alia*:  (a) her reports that pain is worse with

prolonged sitting (ECF No. 11, PageID.490, 641); (b) her report that dizziness and

nausea are worse with position changes (*id.*, PageID.521, 645); (c) her testimony

that she can "usually sit for maybe a half hour[,]" and that she can stand for

"[a]bout ten minutes[,]" at which point "the back and neck pain starts[,]" (*id.*,

PageID.79-80); (d) her testimony about needing to elevate her feet "at least two to

---

[3] The SSA classifies jobs as "sedentary, light, medium, heavy, and very heavy."
20 C.F.R. § 404.1567.

three times during the day[,]" for approximately an hour each time (*id*., PageID.77); (e) her testimony that Tramadol makes her sleepy, so she takes naps during the day (*id*., PageID.75-76); and, (f) Dr. Soni's notation that Tramadol makes Plaintiff fatigued but controls the pain (*id*., PageID.478).  (ECF No. 13, PageID.686, 691.)  Furthermore, the Court notes that, on March 11, 2018, Plaintiff was diagnosed with benign positional vertigo (ECF No. 11, PageID.503, 603, 608) and that the DDS acknowledged this diagnosis in its review of the medical records (ECF No. 11, PageID.97, 113).

Still, while ALJ Gasparovich assessed standing, walking and sitting limitations that are consistent with light work, she did not include a sit/stand option in Plaintiff's RFC.  (ECF No. 11, PageID.53.)  The Court assumes that the ALJ was relying upon the physical RFC assessment of state agency medical consultant Dr. Andrews, who did not include a sit/stand option or the requirement of changing positions in her determination of Plaintiff's exertional limitations.  (ECF No. 11, PageID.101, 117.)  Thus, while further articulation from the ALJ would have provided "a connection between the evidence relied on and the conclusion reached[,]" *Tucker*, 775 F. App'x at 226, the absence of such a limitation finds support in Dr. Andrews's exertional limitations.

Plaintiff also refers to the VE's work-preclusive testimony.  (ECF No. 13, PageID.686, 691.)  True, the VE testified that certain limitations – such as standing

and walking only 4 of eight hours, permission to change positions every 30 to 45 minutes, occasional bending, twisting or turning at the waist, and occasional handling and fingering <u>or</u> needing to elevate legs to waist level for 15 minutes at a time occurring four times throughout the day <u>or</u> certain off-task, unscheduled breaks, or absenteeism hypotheticals – would result in an inability to perform the scrap sorter, counter clerk, or greeter jobs.  (ECF No. 11, PageID.85-87.)  The VE also testified:  "The jobs that I would have with the *occasional handling and fingering* could not be performed with the *sit/stand*, *alternating positions*."  (*Id*., PageID.86 (emphases added).)  Yet, even Plaintiff's own physician (Dr. Soni) checked, "No," when asked, "[w]ith prolonged sitting, should your patient's leg(s) be elevated?" (ECF No. 11, PageID.480.)  In any event, these points need not be discussed further here, as Plaintiff's related capabilities – such as her need to change positions, elevate her legs, and walk around – will be revisited on remand when the ALJ reassesses Plaintiff's RFC.

### ii.    Lifting

Plaintiff takes issue with the RFC's lifting limitations.  (ECF No. 13, PageID.687.)  While the ALJ concluded that Plaintiff is capable of lifting 20 pounds occasionally and 10 pounds frequently, Dr. Soni concluded that Plaintiff is limited to frequently lifting less than 10 pounds and occasionally lifting 10 pounds.  (*Compare* ECF No. 11, PageID.53; *with id.*, PageID.480.)

Although the ALJ's RFC provides that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently, she does not articulate her support for this conclusion.  Nonetheless, the Court can only assume that the ALJ was relying upon the physical RFC assessment of state agency consultant Dr. Andrews, who opined that Plaintiff was capable of occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds.  (ECF No. 11, PageID.101, 117.) Thus, while further articulation from the ALJ would have provided "a connection between the evidence relied on and the conclusion reached[,]" *Tucker*, 775 F. App'x at 226, the ALJ's conclusion that Plaintiff is capable of lifting 20 pounds occasionally and 10 pounds frequently finds support in Dr. Andrew's exertional limitations.

>      **c.      The ALJ's assessed limitations on overhead reaching,
>              handling, and fingering are consistent with or stricter
>              than those assessed by Dr. Andrews.**

Plaintiff also challenges some of the RFC's manipulative limitations.  The SSA's consideration of manipulative limitations includes reaching *any* direction, handling, fingering, and feeling.  (ECF No. 11, PageID.102, 118.)  The ALJ concluded that Plaintiff could not perform *overhead* reaching but could frequently handle and finger.  (ECF No. 11, PageID.53.)  Plaintiff challenges the ALJ's conclusion that she can frequently handle and finger, in support of which she cites Dr. Soni's opinion that Plaintiff can never handle (*i.e.*, grasp, turn or twist objects)

and can only finger (*i.e.*, perform fine manipulations) 60% of an 8-hour working

day.  (ECF No. 11, PageID.481.)  (*Id.*; ECF No. 13, PageID.687-688.)

Although the ALJ's RFC provides that Plaintiff can frequently handle and

finger, she does not articulate her support for this conclusion.  To be sure, the

Court notes the ALJ's Step 2 discussion of CTS, where the ALJ states:  "The

record does not contain any objective evidence with regard to CTS.  There is no

evidence that any surgeries were recommended or performed."  (ECF No. 11,

PageID.52.)   Perhaps that is true, although, without "playing doctor," the Court

notes:  (i) an apparent February 2017 referral to physical therapy for, *inter alia*,

CTS, even though she did not likely meet disability criteria at that point (ECF No.

11, PageID.387); (ii) Plaintiff's April 24, 2017 report that she "[i]s now in wrist

braces on both hands for [CTS][,]" (ECF No. 11, PageID.381); (iii) Plaintiff's

April 24, 2018 report – albeit at a psychiatric consultative examination – that she

has CTS "in both hands with pain and weakness and wears a brace for the wrist[,]"

(ECF No. 11, PageID.529); and, (iv) the May 7, 2018 DDS determined that

Plaintiff's CTS was "severe," (ECF No. 11, PageID.98, 114).

More to the point, as to the RFC's specific fingering and handling

limitations, the Court can only assume that the ALJ was relying upon:  (i) the

Disability Determination Explanation (DDE), which acknowledges Dr. Soni's

MSS and explains that, while Soni's "[o]pinions on functional limitations are

generally in keeping with evidence & reported findings[,]" Plaintiff's "inability to grasp objects at all during an 8hr day seems overly restrictive, especially while fine manipulation is only limited to 60% of an 8 hour day[,]" (ECF No. 11, PageID.93-94, 96, 100, 109-110, 112, 116); and, (ii) the physical RFC assessment of state agency consultant Dr. Andrews, who opined that Plaintiff was capable of frequent handling and fingering, in support of which she noted Plaintiff's bilateral CTS diagnosis and that Plaintiff "wears wrist braces[,]" (ECF No. 11, PageID.102, 118). Thus, while further articulation from the ALJ would have provided "a connection between the evidence relied on and the conclusion reached[,]" *Tucker*, 775 F. App'x at 226, the ALJ's conclusion that Plaintiff is capable of frequent handling and fingering finds support in Dr. Andrew's manipulative limitations.

### d. The RFC does not account for all of Dr. Andrews's physical RFC limitations.

It is clear that the ALJ found Dr. Soni's opinion "non persuasive" and Dr. Andrews's opinion "persuasive." (ECF No. 11, PageID.54.) Plaintiff contends that the ALJ's decision does not "provide some degree of rational[e] as to how she came to this conclusion . . . ." (ECF No. 15, PageID.724.) However, as the Commissioner correctly notes, "[a] non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining

physicians." *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001). (ECF No. 14, PageID.712.)

State agency medical consultant Dr. Andrews provided explanations for the exertional, postural, manipulative and environmental limitations she assessed. (ECF No. 11, PageID.101-103, 117-119.)  Thus, to the extent the ALJ's physical RFC determination is *consistent with* the physical RFC assessment from state agency medical consultant Dr. Andrews, there is support for the ALJ's conclusion. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) ("Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work.").  (ECF No. 14, PageID.708.)

Still, when the ALJ found Dr. Andrews's opinion to be "persuasive because it is well supported by the medical records and treatment history as discussed herein[,]" the ALJ further stated that Dr. Andrews's opinion was "incorporated into the [RFC] assessment."  (ECF No. 11, PageID.55.)  In Plaintiff's case, there are *differences* between Dr. Andrews's physical RFC assessment and the ALJ's RFC determination that *disfavor* Plaintiff, namely the lack of:  (1) an exertional limitation on *carrying*; (2) an exertional limitation on *pushing and/or pulling* (which Dr. Andrews limited to frequent due to imaging that shows degenerative

arthropathy and rotator cuff tear in the left shoulder, DJD in the right shoulder, and diagnosis of adhesive capsulitis in the file); (3) postural limitations to only frequent *climbing of ramps/stairs* and only frequent *balancing* (which Dr. Andrews supported with Plaintiff's complaints of dizziness, her BPPV diagnosis, and foot neuropathy); and, (4) an environmental limitation to avoid concentrated exposure to *vibration* (for which Dr. Andrews did not provide an express explanation). (*Compare* ECF No. 11, PageID.53, with ECF No. 11, PageID.101-103, 117-119.)

To be sure, Plaintiff's appeal focuses on sitting and standing at one time, walking around, lifting, handling and fingering.  (ECF No. 11, PageID.684-688.) Yet, the Commissioner has found Dr. Andrews's opinion to be persuasive, and claims to have incorporated it into the RFC (ECF No. 11, PageID.54); yet this subsequent reviewer cannot discern why several of Dr. Andrews's limitations – carrying, pushing and/or pulling, climbing ramps/stairs, balancing, and vibration – were *omitted* from the ALJ's RFC determination.

## 2.    Subjective symptoms

Plaintiff's second statement of error challenges the ALJ's evaluation of Plaintiff's subjective symptoms.  (ECF No.13, PageID.689-692; ECF No. 15, PageID.727-729.)  The SSA acknowledges that "symptoms, such as pain, are subjective and difficult to quantify," and, thus, provides that "any symptom-related functional limitations and restrictions that your medical sources or nonmedical

sources report, which can reasonably be accepted as consistent with the objective

medical evidence and other evidence, will be *taken into account* as explained in

paragraph (c)(4) of this section in reaching a conclusion as to whether you are

disabled."  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (emphasis added).  The

SSA will consider relevant factors, including:

    (i)      Your daily activities;

    (ii)     The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(*Id*.)  Moreover, "[t]he determination or decision must contain specific reasons for

the weight given to the individual's symptoms, be consistent with and supported by

the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms."

SSR 16-3P, 2017 WL 5180304, *10 (S.S.A. Oct. 25, 2017).  *See also* SSR 16-3p, !

2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016) (same).

     ALJ Gasparovich acknowledged 20 C.F.R. § 404.1529 and SSR 16-3p.

(ECF No. 11, PageID.53.)  The ALJ cited Plaintiff's function report for its list of

medical conditions and also cited her hearing testimony.  (ECF No. 11, PageID.54,

70-82, 254.)  After concluding that Plaintiff's "statements about the intensity,

persistence, and limiting effects of his or her symptoms . . . are inconsistent

because they are not supported by the medical records and treatment history[,]" the

ALJ reviewed medical records and opinion evidence, along the way noting

"limited and conservative" treatment or "no evidence of any significant treatment."

(ECF No. 11, PageID.54-55.)

     However, the Court need not consider Plaintiff's challenge to the ALJ's

evaluation of subjective symptoms – such as medication side effects (ECF No. 11,

PageID.75-76, 478; ECF No. 13, PageID.691) – if it agrees that the ALJ did not

adequately explain the RFC.  While the Undersigned recognizes that the ALJ's

decision to discount Plaintiff's subjective allegations must be given deference, as

the ALJ was not required to accept Plaintiff's subjective allegations at face value,

*Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("an

administrative law judge's credibility findings are virtually 'unchallengeable.' ")

(citing *Payne v. Comm'r of Soc. Sec.,* 402 F.App'x 109, 112–113 (6th Cir. 2010)), ,

the ALJ will automatically re-evaluate Plaintiff's subjective symptoms when he or she re-assesses the medical records and opinion evidence.

### F.    Conclusion

In sum, the ALJ relied upon the state agency medical consultant's physical RFC assessment and claimed to have incorporated it into the RFC, but this subsequent reviewer cannot discern why several of Dr. Andrews's limitations – carrying, pushing and/or pulling, climbing ramps/stairs, balancing, and vibration – were omitted from the ALJ's RFC determination. Accordingly, as detailed in the foregoing discussion, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment or remand (ECF No. 13), **DENY** Defendant's cross-motion for summary judgment (ECF No. 14), and **REMAND** to the Commissioner for action consistent with this recommendation, including a re-evaluation of the opinion evidence, an adequate articulation as to why any discounted medical opinions were unsupported or inconsistent, and a re-assessment and fuller explanation of the RFC to clarify the connection between the evidence upon which the ALJ relies and the RFC's various assessed limitations. *Tucker*, 775 F. App'x at 226.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being

served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after being served

with a copy of an objection, the opposing party may file a concise response

proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2);

E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised

in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," *etc.*  If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Dated:   August 13, 2021                    s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE